# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

Robert Carrasco Gamez Jr.,

       Petitioner,

vs.

Charles L. Ryan,

       Respondent.

CV 12-0639-TUC-RM (JR)

**REPORT AND RECOMMENDATION**

      Pending before the Court is Roberto Carrasco Gamez Jr.'s Amended Petition for Writ of Habeas Corpus (Doc. 17) filed pursuant to 28 U.S.C. § 2254.   In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation.   As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

**A.      Trial**

In its Memorandum Decision affirming Gamez's convictions and sentence, the

Arizona Court of Appeals summarized the factual background as follows:[1]

> In March 2002, two Tucson police officers answered a call about "unknown trouble" at an apartment complex, where someone reportedly was kicking a third-story apartment door.  The officers approached the apartment and noticed the door was damaged.  They knocked on the door and announced their presence.  While he was knocking, one of the officers saw someone inside the apartment.  After some delay, a man partially opened the door, stepped outside, and said only he and two girls were inside.
>
> While one officer questioned the man, the other officer entered and performed a protective sweep of the apartment.  He opened a bedroom door and saw an empty shoulder holster on the floor; the man at the door had told the officers no guns were in the apartment.  With his gun drawn, the officer entered the bedroom and saw a man standing in the closet aiming an assault rifle at him.  The man pulled the trigger, but the gun did not fire, and the officer left the room.  Shots were fired through the bedroom door into the living area, and the officer fired back.  The officers then fled the apartment, and another man came outside and continued firing at them.
>
> Additional police units arrived at the scene, and special weapons and tactics (SWAT) officers took over.  The man at the door was arrested and three other people, two girls and a man, were found in the apartment.  Gamez and another man were apprehended near the apartment.  At trial, Gamez testified that he had been in the closet when he heard one of the other men in the apartment screaming that he had been shot.  Gamez further testified he had seen a hand with a gun and that he started shooting toward what he claimed to be an unknown intruder.

---

[1] The factual summary of the Arizona Court of Appeals is accorded a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009) (citing *Hernandez v. Small*, 282 F.3d 1132, 1135 n. 1 (9th Cir. 2002)).

1

2

3

4

Police later determined that some of the apartment occupants, driving a Maxima, had been stopped by officers approximately an hour earlier.  The officers had found several weapons in the car, but the men occupying it had escaped.  Gamez had not been in the Maxima at the time because, according to one of the girls, he had been "too messed up" on drugs to leave the apartment.

5

6

7

8

9

The two girls found in the apartment testified that when the officers had arrived there, the men in the apartment had panicked, apparently believing the police had located them.  One of the girls testified that the men had then begun loading weapons and that Gamez had said he was going to "shoot the cops . . . [b]ecuase he hates cops and he wasn't going to go to jail."  Ultimately, however, the men had decided that one of them would open the door and talk to the officers.  The girls also testified that Gamez and the other men had told them they would be killed if they talked about what had happened.

10  Ex. G, pp. 3-4 (copy of decision).[2]  Based on these facts, the jury found Gamez guilty

11  of two counts each of attempted first-degree murder, aggravated assault with a deadly

12  weapon and endangerment.  *Id*., p. 2.  The jury also found that the aggravated assault

13  offenses were of a dangerouns nature and had been committed against peace officers.

14  *Id*.   The trial court sentenced Gamez to aggravated, concurrent and consecutive

15  prison terms totaling 46 years.  *Id*.; Ex. A (sentencing order).

16      **B.      Direct Appeal**

17          In his opening brief on appeal, Gamez, through appointed counsel, argued that

18  trial erred by allowing other act evidence, by denying his motion to suppress, and by

19  denying his motion to sever the trial from that of his co-defendants.  Ex. D.  The

20  _____

21  [2] Unless otherwise indicated, all exhibit references are to the exhibits attached to the
    Respondents' Answer to Amended Petition for Writ of Habeas Corpus (Doc. 49).

22

United States Supreme Court's decision in *Blakely v. Washington¸* 542 U.S. 296 (2004), was issued four days before Gamez filed his opening brief and was not addressed in the opening brief. However, the State mentioned *Blakely* in its answering brief and Gamez raised a *Blakely* claim in his reply brief. Ex. E, n. 5. In addition to the claims raised in the opening brief, the Court of Appeals also addressed Gamez's *Blakely* claim. *Id.* The court affirmed Gamez's convictions, but finding *Blakely* error, vacated his sentence and remanded for resentencing. Ex. E, pp. 8-15.

The Arizona Supreme Court granted the State's petition for review and remanded the case back to the Arizona Court of Appeals for reconsideration in light of the then-recent decisions in *State v. Martinez*, 210 Ariz. 578 (2005), and *State v. Henderson*, 210 Ariz. 561 (2005). Ex. F (Arizona Supreme Court Minutes). On remand, relying *inter alia* on *Martinez*, the Court of Appeals concluded that the trial court properly found Gamez's prior convictions as an aggravating factor and could thus consider other aggravating factors without first submitting them to a jury. Ex. G, pp. 9-10. Based on the reconsideration and denial of Gamez's *Blakely* claim, the Court of Appeals vacated its prior decision, replaced it with the reconsidered decision, and affirmed Gamez's convictions and sentences. *Id.*, pp. 2, 8-11. The court filed its mandate on April 18, 2006. Ex. H.

## C.    First PCR Proceeding

On October 26, 2006, Gamez filed a *pro se* Notice of Post Conviction Relief ("PCR") pursuant to Rule 32.1, Arizona Rules of Criminal Procedure. Ex. I. The trial court appointed attorney Jacqueline Rohr to represent Gamez. Ex. J. The trial

4

court then granted Rohr's motion to appoint new counsel and appointed Anne Elsberry.  Ex. K.  The trial court granted Elsberry's two motions for extensions of time.  Exs. M (motion), N (order), O (motion), P (order).  Elsberry then notified the court that upon "review of the record and the transcripts of the trial, sentencing and direct appeal, counsel has determined that she can find no issues for review," and requested that Gamez be given additional time to file a *pro se* PCR petition.  Ex. Q.  On December 6, 2007, the trial court granted Elsberry's request and gave Gamez 45 days from his receipt of the PCR record to file a *pro per* petition.  Exs. R, S.  The deadline passed on February 28, 2008, without Gamez filing a petition and, on March 25, 2008, the trial court dismissed his PCR notice without prejudice.  Ex. T.  After Gamez inquired about the status of the PCR proceedings, the trial court, by order dated April 2, 2008, reinstated the proceedings and ordered Gamez to file his PCR petition by July 1, 2008.  Ex. V.

Gamez filed his *pro se* petition on July 1, 2008, arguing that his trial counsel was ineffective for failing to renew the severance motion, appellate counsel was ineffective for failing to argue that trial counsel's failure to renew the severance motion constituted fundamental error due to the "spill over effect" of the evidence admitted at trial.  Ex. W.  In a ruling dated December 8, 2008, the trial court denied relief, finding that the Court of Appeals had already reviewed and denied the substance of Gamez's claims.  Ex. X, pp. 2-3.  Gamez did not appeal the trial court's decision.  *Amended Petition*, p. 4.

1

### D.        Second PCR Proceeding

2        On March 15, 2010, Gamez filed a second PCR notice and the trial court

3 reappointed Elsberry to represent him.   Exs. Y, Z.   The trial court subsequently

4 granted Elsberry's request to withdraw and appointed attorney Ronald Zack to

5 represent Gamez.   Ex. AA.   Zack filed a notice informing the trial court that he had

6 reviewed the record and trial transcripts, consulted with trial counsel, and considered

7 Gamez's input, but found no good faith basis for post-conviction relief.   Ex. BB.   The

8 court granted Zack's request to allow Gamez additional time to file a *pro se* petition.

9 Ex. CC.   The trial court granted Gamez an additional 45 days from the receipt of the

10 record to file his PCR petition.   Ex. CC.

11        Gamez filed a 35-page PCR petition which was rejected by the trial court

12 because it exceeded the 25-page limit prescribed by Rule 32.5, Arizona Rules of

13 Criminal Procedure.   Ex. EE.   On February 10, 2011, Gamez filed a revised petition,

14 arguing that 2006 changes to the statutes defining self-defense and defense of others

15 and reallocating the burden of proving affirmative defenses should be applied

16 retroactively to his case.   Ex. FF, pp. 1-5.   He also raised claims that his trial and

17 appellate counsel were ineffective, that the trial court had erred, the he was subjected

18 to prosecutorial misconduct, and that newly discovered material facts entitled him to

19 relief.   *Id*., pp. 6-21.   In a ruling filed on July 8, 2011, the trial court concluded that

20 change in the self-defense statute did not retroactively apply to Gamez's case, that his

21 claims of ineffective assistance, prosecutorial misconduct, and newly discovered

22

1    evidence were precluded because they were resolved, or could have been raised, on

2    direct appeal or in his first PCR proceeding.  Ex. HH, pp. 4-7.

3         Gamez appealed the trial court's denial, raising the same arguments and

4    adding an additional claim of ineffective assistance of counsel and two more newly-

5    discovered evidence claims.   Ex. II.   The Court of Appeals granted review, but

6    denied relief.  Ex. JJ.  In doing so, the court largely adopted the trial court's decision,

7    but noted that the substantive claims denied on the merits on direct review were not

8    necessarily precluded when subsequently raised in PCR proceedings as claims for

9    ineffective assistance of counsel.  The court nevertheless found the claims fitting that

10   description were precluded because Gamez could have raised them in his first

11   petition for post-conviction relief.  Ex. JJ, pp. 3-4.  Gamez then sought and was

12   denied review by the Arizona Supreme Court.  Ex. KK.

13        **E.     Third PCR Proceeding**

14        On March 23, 2012, Gamez filed his third PCR notice and the trial court

15   appointed attorney Brick Storts to represent him.  Exs. MM, NN.  Storts notified the

16   trial court that he could find no issues that could be raised in a successive PCR

17   petition and noted that Gamez wished to file a *pro per* petition.  Ex. OO.  The court

18   granted an extension and Gamez filed a *pro per* petition raising claims of actual

19   innocence, significant change in the law, trail court error, newly discovered evidence,

20   ineffective assistance of counsel, and prosecutorial misconduct.  Exs. PP, QQ.  The

21   trial court concluded that all but Gamez's claim of newly-discovered evidence were

22   precluded under Rule 32.2(a).  Ex. RR.  The court also denied the newly-discovered

7

1   evidence claims, finding Gamez had not satisfied the requirements of Rule 32.1(e).

2   *Id.*

3        Gamez sought review, raising the same claims and arguing that the trial court

4   improperly found his claims to be precluded.  Ex. SS.  The Arizona Court of Appeals

5   granted review, adopted the trial court's ruling, and denied relief.  Ex. TT.  Gamez

6   did not seek further review.  Ex. UU (mandate).

7        **F.      Habeas Petition**

8        Gamez commenced this action with the filing of his original petition on

9   August 27, 2012.  (Doc. 1).  He subsequently filed the now pending amended petition

10  on June 4, 2013.  (Doc. 8).  Gamez subsequently requested a stay be entered to allow

11  him to exhaust the unexhausted claims raised in the amended petition.  (Doc. 18).

12  By order filed March 4, 2014, Gamez stay request was denied as moot without

13  objection.  (Doc. 43).  On June 2, 2014, Respondent filed their answer to the petition.

14  (Doc. 49). On June 27, 2014, Gamez filed his reply.  (Doc. 58).

15  **II.     TIMELINESS**

16       **A.      The Petition is Untimely**

17       The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

18  provides for a one year statute of limitations to file a petition for writ of habeas

19  corpus.   28 U.S.C. § 2244(d)(1).   Petitions filed beyond the one-year limitations

20  period must be dismissed.  *Id.* The statute provides in pertinent part that:

21       (1) A 1–year period of limitation shall apply to an application for a writ
         of habeas corpus by a person in custody pursuant to the judgment of a
22       State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Applying these standards, Gamez's petition is clearly untimely. The trial court sentenced Gamez on June 13, 2003. Ex. A. Gamez filed a timely notice of appeal on June 16, 2003. Ex. C; 28 U.S.C. § 2244(d). After the case went to the Arizona Supreme Court and was remanded back to the Arizona Court of Appeals, Gamez's convictions and sentences were affirmed and the Court of Appeals court filed its mandate on April 18, 2006. Exs. G, H. Gamez then had 30 days from the date the Court of Appeals issued its mandate, until May 18, 2006, to file a timely PCR notice. Ariz.R.Crim.P. 32.4(a) ("In a Rule 32 of-right proceeding, the notice

1    must be filed within . . . thirty days after the issuance of the order and mandate in the

2    direct appeal . . . .").  Gamez did not file his first PCR notice until October 26, 2006.

3    Ex. I; *Isley v. Arizona Department of Corrections*, 383 F.3d 1054, 1056 (9th Cir.

4    2004) (noting that in Arizona, post-conviction review is pending once a notice of

5    post-conviction relief is filed even though the petition is not filed until later).

6    Because Gamez did not have a "properly filed application for State post-conviction

7    or other collateral review application" pending between the filing of the mandate on

8    direct appeal and the filing of his first PCR notice, the statute of limitations ran for

9    161 days.  The trial court dismissed Gamez's PCR petition on December 8, 2008.

10   Ex. X.  He then had 30 days to file a petition for review in the appellate court.

11   Ariz.R.Crim.P. 32.9(c).  Because Gamez did not seek review of his PCR petition, his

12   conviction became final on January 8, 2009.  *See Gonzalez v. Thaler*, -- U.S. --, 132

13   S.Ct. 641, 656 (2012) (for a state prisoner who does not seek review in the state's

14   highest court, the judgment becomes final on the date that the time for seeking such

15   review expires); *but see Samaniego v. Ryan*, 2011 WL 7109366, *3 (D.Ariz. Dec.1,

16   2011) (petition for post-conviction relief remained pending until the date the trial

17   court summarily dismissed the proceeding and because petitioner did not appeal

18   dismissal, the statute of limitations began to run the day after dismissal). The

19   deadline for Gamez to file the instant petition came 204 (365-161) days later, on

20   August 1, 2009.  The instant action was filed on August 27, 2012, more than three

21   years after the expiration of the AEDPA statute of limitations had expired.

22

1    As Respondents note, Gamez's second and third PCR petitions do not impact

2 the limitations calculation because both were filed after the AEDPA deadline expired

3 and were not properly filed.  Gamez's second PCR petition was filed on March 15,

4 2010, and his third was filed on March 23, 2012.  Exs. Y, MM.  An untimely state

5 post-conviction peititon does not restart an already expired AEDPA statute of

6 limiations.  *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001).  Moreover, the

7 Arizona Court of Appeals found the claims precluded under Arizona law.  Exs. JJ,

8 TT.  As such, the petitions were not "properly filed."  *See Pace v. DiGuglielmo*, 544

9 U.S. 408, 414 (2005).  Thus, absent equitable tolling, the petition is untimely.

10    **B.    Equitable Tolling is Unavailable**

11    Gamez does not contend that his petition was timely filed under the AEDPA.

12 However, he does argue that he is entitled to equitable tolling and that his untimely

13 filing is excused by *Martinez v. Ryan*, -- U.S. --, 132 S.Ct. 1309 (2012).  Gamez is

14 entitled to equitable tolling if he can demonstrate "'(1) that he has been pursuing his

15 rights diligently and (2) that some extraordinary circumstances stood in his way'" to

16 prevent him from timely filing his petition.  *Holland v. Florida*, 560 U.S. 631, 130

17 S.Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

18 To qualify as extraordinary, a circumstance must be one that is "beyond a prisoner's

19 control," that "make[s] it impossible to file a petition on time."  *Miles v. Prunty*, 187

20 F.3d 1104, 1107 (9th Cir. 1999).  Moreover, an extraordinary circumstance must be

21 attributable to "external forces, rather than a petitioner's lack of diligence[.]"  *Id.*

22

1    In his reply, Gamez offers several justifications for his late filing.  He claims

2    that the prison's paralegal would not assist him and that he was functioning under

3    "systemic deprivation of access to court."  *Reply*, p. 5.  He also alleges that during the

4    relevant periods, he was suffering from a serious mental disability.  The Court notes,

5    however, that these purported extraordinary circumstances did little to hamper his

6    pursuit of other claims.  For example, from August 2010 through December 2012,

7    Gamez actively litigated at least two civil rights claims.  *See Gamez v. Ryan*, CV 10-

8    2663-PHX-JWS; *Gamez v. Ryan*, CV 10-1743-PHX-JWS.  He has also pursued

9    habeas relief in relation to another state court conviction.  *See Gamez v. Ryan*, CV

10   13-687-TUC-JGZ.  Moreover, the records filed in this case reflect that he was

11   pursuing relief in the state courts in 2010 through 2013 and filing extensive and fully-

12   researched briefs.  *See* Exs. DD, QQ, SS.  Gamez's able pursuit of this case and the

13   others identified above undermines any claim that it was impossible for Gamez to file

14   his petition at least three years before he finally did.  His actions cannot be

15   characterized as diligent and he is therefore not entitled to equitable tolling of the

16   AEDPA's limitations period.  *See Holland*, 130 S.Ct. at 2562.

17   Moving on to Gamez's main contention, he claims that his claims are saved by

18   the rule announced in *Martinez v. Ryan*, -- U.S. --, 132 S.Ct. 1309 (2012).   In

19   *Martinez*, the Supreme Court held that in certain circumstances ineffective assistance

20   of counsel claims that were procedurally barred in state court could nevertheless be

21   considered when raised in a habeas petition.  *See Martinez*, 132 S.Ct. at 1314;

22   *Trevino v. Thaler*, 569 U.S. --, 133 S.Ct. 1911, 195 (2013) (extending *Martinez* rule

to state procedural systems that make it "virtually impossible" for an ineffective assistance of counsel claim to be presented on direct review).   However, as the Eleventh Circuit recently explained:

> the *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period.  The § 2254 ineffective-trial-counsel claims in *Martinez* and *Trevino* were not barred by AEDPA's one-year limitations period.   Instead, those § 2254 claims were dismissed under the doctrine of procedural default because the petitioners never timely or properly raised them in the state courts under the states' procedural rules.  At no point in *Martinez* or *Trevino* did the Supreme Court mention the "statute of limitations," AEDPA's limitations period, or tolling in any way.

*Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014).

As in *Arthur*, Gamez's case does not turn on a showing of "cause" under the procedural default doctrine.  Gamez's petition is subject to dismissal because it was filed well after the expiration of the AEDPA statute of limitations.  As he is unable to establish grounds for equitable tolling, it is the AEDPA limitations period, and not a state procedural rule, that bars his petition under section 2244(d)(1).  The *Martinez* rule provides no grounds to avoid that result.

## III.   ACTUAL INNOCENCE

In his reply, Gamez also argues that under the equitable exception to the statute of limitations for actual innocence recognized in *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc), he is entitled to the gateway around the statute of limitations.  *Reply*, p. 16-18. The Court in *Lee*, relying on the United States Supreme Court decision in *Schlup v. Delo*, 513 U.S. 298 (1995), held "that a credible claim of

13

1   actual innocence constitutes an equitable exception to AEDPA's limitations." *Lee*,

2   653 F.3d at 932. To meet the equitable exception of the actual innocence gateway,

3   Gamez must "support his allegations of constitutional error with new reliable

4   evidence . . . that was not presented at trial." *Id*. at 939 (quoting *Schlup*, 513 U.S. at

5   324). "The evidence of innocence must be 'so strong that a court cannot have

6   confidence in the outcome of the trial.'" *Id*. at 938 (quoting *Schlup*, 513 U.S. 316).

7   The Court must then determine whether "it is more likely than not that no reasonable

8   juror would have convicted him in light of the new evidence." *Id*. at 938 (quoting

9   *Schlup*, 513 U.S. at 327).

10       Here, Gamez does not present any new facts or law that would allow him to

11   pass through the actual innocence gateway. His argument is that cell phone records

12   exist that prove "the Pima County Attorney's Office and the Tucson Police

13   Department suborned police perjury during the search and seizure hearing and at

14   trial." *Reply*, p. 16. Gamez does not explain how these cell phone records might

15   prove his actual innocence. Moreover, his claim of actual innocence is undermined

16   by his claim that contamination at his elementary school caused him to commit his

17   crimes. *See Amended Petition*, pp. 16-18. In any case, his arguments are not the sort

18   that establish legal error and do not constitute "new reliable evidence . . . that was not

19   presented at trial." *Lee*, 653 F.3d at 939 (quoting *Schlup*, 513 U.S. at 324).

20   Therefore, Gamez has not presented new evidence establishing that "it is more likely

21   than not that no reasonable juror would have convicted him in light of the new

22   evidence." *Id*. at 938 (quoting *Schlup*, 513 U.S. at 327). Accordingly, Gamez cannot

14

1  pass through the actual innocence gateway around the AEDPA's statute of

2  limitations, and his petition is untimely.

3  **IV.     RECOMMENDATION**

4        Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

5  District Court, after its independent review, **deny** Gamez's Amended Petition for

6  Writ of Habeas Corpus (Doc. 17).

7        This Recommendation is not an order that is immediately appealable to the

8  Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1),

9  Federal Rules of Appellate Procedure, should not be filed until entry of the District

10  Court's judgment.

11       However, the parties shall have 14 days from the date of service of a copy of

12  this recommendation within which to file specific written objections with the District

13  Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules

14  of Civil Procedure.  Thereafter, the parties have fourteen (14) days within which to

15  file a response to the objections.  Replies shall not be filed without first obtaining

16  leave to do so from the District Court.  If any objections are filed, this action should

17  be designated case number: **CV 12-0639-TUC-RM**.  Failure to timely file objections

18  . . . .

19  . . . .

20  . . . .

21

22

1    to any factual or legal determination of the Magistrate Judge may be considered a

2    waiver of a party's right to *de novo* consideration of the issues.  *See United States v.*

3    *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

4         Dated this 30th day of January, 2015.

5

6

7    Jacqueline M. Rateau
     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22